**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jacques Calixte, individually and on behalf of all others similarly situated, | 1:22-cv-01855 |
| Plaintiff, | |
| - against - | First Amended Complaint |
| Walgreen Co., | Jury Trial Demanded |
| Defendant. | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>Nature of the Action</u>

1.    Walgreen Co. ("Defendant" or "Walgreens") manufactures, labels, markets, and/or sells gift cards or stored-value cards under its own brand and for third-parties at its thousands of stores nationwide ("Gift Cards").

2.    For a number of years, Walgreens has been aware that thousands of Gift Cards it sold to consumers have been tampered with prior to Walgreens' sale of the Gift Cards.

3.    Walgreens knew that the Gift Cards it was selling to consumers were unsecure and susceptible to tampering by third parties to deplete consumers' funds after they had purchased the Gift Cards from Walgreens retail stores.

4.    Walgreens knew or should have known that third parties were obtaining the Gift Card's concealed activation code ("Activation Code") and using the codes to steal consumers' funds that they had loaded onto the Gift Cards at Walgreens retail stores.

5.    One method of this tampering was scammers entering Walgreens stores, removing the security tape from Gift Cards, logging each card's Activation Code, and using the Activation

Code to remove customer funds after the customer loaded money onto the Gift Cards.

6.     A scammer may also purchase a gift card legitimately and make copies of that gift card's bar code number onto stickers. They take those stickers into various Walgreens stores and place them onto unpurchased gift cards.

7.     If anyone purchases one of these "stickered" cards, all money is loaded onto the scammer's card instead of the newly-purchased one.

8.     Walgreens failed to take adequate and reasonable measures to (1) ensure that the Gift Cards they were selling were safe, secure, and free from tampering, and (2) warn and disclose to its customers that it was possible that the Gift Cards had been tampered with.

9.     The exact number of Walgreens customers affected by Walgreens' failure to secure the Gift Cards is unknown, however, Walgreens is the United States' second-largest pharmacy with gross revenues in excess of $133 billion.

10.     It is likely that tens of thousands of customers, if not more, have been harmed and suffered losses totaling millions of dollars.

<u>Jurisdiction and Venue</u>

11.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

12.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

13.     Plaintiff Jacques Calixte is a citizen of Florida.

14.     Defendant Walgreen Co. is an Illinois corporation with a principal place of business in Deerfield, Lake County, Illinois.

15.     The class of persons Plaintiff seeks to represent includes persons who are citizens

of different states from which Defendant is a citizen.

16.     The members of the class Plaintiff seeks to represent are more than 100, because the Gift Cards have been sold for several years in thousands of locations, in the States covered by Plaintiff's proposed classes at Defendant's stores and from its website.

17.     Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Lake County, such as Defendant's decisions for selling and marketing the Gift Cards.

Parties

18.     Plaintiff Jacques Calixte is a citizen of Biscayne Park, Miami-Dade County, Florida.

19.     Plaintiff purchased the three Vanilla Visa gift cards below on November 4, 2020, at Walgreens, 567 NE 125th St North Miami, FL 33161, each with $150 and expiration dates of January 2029.




20.     At the time of purchase, Plaintiff expected to use the $150 on each of the three Gift Cards he paid for because that is what Defendant represented.

21.     Plaintiff was not informed the Gift Cards were tampered with or otherwise compromised before he bought them.

22.     Plaintiff did not immediately use cards as he misplaced them within his residence.

23.     In March 2022, Plaintiff found the cards in his residence and they were unopened.

24.     Plaintiff then checked the Gift Card balances and found only one of them, the first Gift Card ending in 3604 had the full $150 balance.

25.     Plaintiff took the first Gift Card ending in 3604 and went to Publix to buy food on March 12, 2020.



26.     The second Gift Card ending in 0750 had a balance of $5.

4

27.     The records for this card show that on October 20, 2021, a purchase of $55.00 was made at Target located at 41040 California Oaks Road, Murrieta, CA.

28.     Less than three hours later, purchases of $64.65 and $25.35 were made in Target at 100 Perimeter Center Place, Atlanta, GA 2036.

29.     Even if Plaintiff went to the Murrieta California Target, which he did not, he could not have traveled from there to the Atlanta Target in under three hours to make the identified purchases.



30.     The third Gift Card ending in 3402 had a balance of $0.

31.     The records for this card show that it was bought at Walgreens and there was no activity on the card until October 28, 2021, when a transaction of $150 was made at Target, 2270 N Bellflower Blvd, Long Beach, CA 90815.



32.    Plaintiff has never been to any of Target stores where the Gift Cards were used, nor was he in California or Atlanta on the dates those cards were used or any other dates during this time period.

33.    Defendant Walgreen Co. is an Illinois corporation with a principal place of business in Deerfield, Illinois, Lake County.

34.    Walgreens is America's second largest chain of pharmacies after CVS with thousands of stores nationwide.

6

35.     Pharmacist Charles R. Walgreen Sr. in 1901 founded Walgreens, and initially manufactured his own line of drug products to ensure high quality and low prices.

36.     During the Great Depression, Walgreens made extra efforts to help the many people effected by the economic downturn.

37.     Walgreens has consistently been a place for consumers to fill their most important needs.

38.     Walgreens sells more than the drug products made by Mr. Walgreen, and offers groceries, household goods, cosmetics, small appliances and gift cards under its own brand and for companies that sell the Vanilla Visa cards bought by Plaintiff.

39.     From the thousands of Walgreens stores in all 50 states, consumers have confidence Walgreens is not just looking out for their health, but for their general well-being.

40.     This is embodied in Walgreens' motto, "Well trusted in 1901," placed throughout its retail locations.





41.    "Trust" is defined as "to believe that someone is good and honest and will not harm you, or that something is safe and reliable."[1]

42.    Plaintiff was aware of and saw Walgreens' statement that it is "Well trusted since 1901."

43.    Plaintiff and other customers of Walgreens believe that purchasing Gift Cards from Walgreens is "safe and reliable" and that they will be able to access the monies stored on them.

44.    Walgreens' website includes a dedicated page focused on "Fraud Information," designated as "Helping you be safe from frauds and scams."[2]

---

[1] Trust, Cambridge Dictionary.
[2] Walgreens, Fraud Information.



45.     Walgreens emphasizes that "[it is] always looking out for our customers and their wellbeing" and offers "Safety Tips" to "help [them] steer clear from a variety of frauds and scams out there."



46.     Walgreens offers general "Safety Tips" but more specific messages for the various types of ways its customers can be victimized, such as "Gift Card & Money Transfer Scams,"

"Phishing Emails," "SMS (Text Message) Phishing," "Mystery Shopping Scams," "Employment & Recruitment Scams," "Caller ID Spoofing" and "Medical Record Request Scams."

47.     Walgreens identifies "a few different scams of this [Gift Card & Money Transfer Scams] variety."

> There are a few different scams of this variety to be aware of:
>
> **Emergency Scam**
>
> The scammer calls pretending to represent a loved one in an emergency that requires payment with gift cards or a money transfer. Bail payment, medical expenses, or emergency travel funds are common scenarios used in these schemes. Scammers often target the elderly in these situations, typically impersonating a grandchild or person of authority (e.g., law enforcement, medical professional, attorney).
>
> **IRS Scam**
>
> The scammer impersonates an IRS employee and threatens legal action or imprisonment if they don't receive payment by money transfer or gift cards for unpaid taxes.
>
> **Online Seller Scam**
>
> Often taking place on a resale site or online marketplace (e.g., Craigslist, OfferUp), the scammer advertises an item for a price that seems too good to be true and requests payment in the form of gift cards or a money transfer. Once the payment is received, they cut off all means of communication with the victim.

48.     One of these is the "Emergency Scam," where "The scammer calls pretending to represent a loved one in an emergency that requires payment with gift cards or a money transfer."

49.     Another is the "IRS Scam," where "The scammer impersonates an IRS employee and threatens legal action or imprisonment if they don't receive payment by money transfer or gift cards for unpaid taxes."

50.     Finally, the "Online Seller Scam" "Often tak[es] place on a resale site or online marketplace (e.g., Craigslist, OfferUp), [where] the scammer advertises an item for a price that seems too good to be true and requests payment in the form of gift cards or a money transfer. Once the payment is received, they cut off all means of communication with the victim."

51.     Walgreens offers help for those "[who]'ve been scammed into paying with gift cards purchased at a Walgreens store."

52.     Walgreens promises to "work with [its] gift card processor and the 3rd party gift card issuer to attempt to recover any available funds on the cards" but cautions "that if the account numbers and PINs have been disclosed to the scammer and the balance has been depleted, [it] will not be able to return any funds back to [them]."

53.     Finally, Walgreens acknowledges that "the high volume of reports [means] the process can take up to twelve weeks to resolve."

If you've been scammed into paying with gift cards purchased at a Walgreens store, please contact us at 1-877-865-9130. Be prepared to provide a copy of your purchase receipt and images of the front and back of the card(s).

We will work with our gift card processor and the 3rd party gift card issuer to attempt to recover any available funds on the cards. Please note that if the account numbers and PINs have been disclosed to the scammer and the balance has been depleted, we will not be able to return any funds back to you. Due to the high volume of reports, the process can take up to twelve weeks to resolve.

**Tips to Avoid Gift Card & Money Transfer Payment Scams**

- Consider the type of payment being requested. Since credit cards have fraud protection, many social engineers ask for payment through a money transfer or a gift card because it's nearly impossible to get your money back. Reputable companies and government organizations won't request to be paid this way.
- Pay individual sellers for online orders through an official selling platform (e.g., Etsy) or a payment service like PayPal. These websites typically offer order protection and will issue a refund if a purchase isn't received, or an order isn't as described.
- Be aware that a fraudster may use social media to find the names of a potential victim's friends and family to make their story seem more convincing.
- Discuss the situation with someone before reacting. Scammers create a sense of urgency and may even make threats to rush you to make decisions. Slow down and reflect on their story, conduct some research, or talk it through with a friend.

54.     In its "Tips to Avoid Gift Card & Money Transfer Payment Scams," Walgreens recommends to "Consider the type of payment being requested."

55.     Since "credit cards have fraud protection, many social engineers ask for payment through a money transfer or a gift card because it's nearly impossible to get your money back."

56.     Walgreens recommends "Pay[ing] individual sellers for online orders through an official selling platform (e.g., Etsy) or a payment service like PayPal [because] These websites typically offer order protection and will issue a refund if a purchase isn't received, or an order isn't as described."

57.     Walgreens recognizes that "a fraudster may use social media to find the names of a potential victim's friends and family to make their story seem more convincing" and "create a sense of urgency," but advises customers to "Slow down and reflect on their story, conduct some research, or talk it through with a friend."

58.     This detailed typology of gift card scams show Walgreens is aware of the many methods bad actors use to take advantage of gift card users.

59.     Significantly, Walgreens fails to mention the Activation Code Scam, which affected Plaintiff and at least tens of thousands of others who buy prepaid gift cards at its stores.

60.     The monetary losses from the Activation Code Scam exceeds those from the three types of gift card scams it identifies.

61.     As gift card users are often part of the roughly five percent "of Americans do not have a savings or checking account," "mak[ing] it difficult for millions of people to access their paychecks or receive financial assistance from government programs, without risking delays or incurring expensive check-cashing fees," this group often has few choices but to use gift cards to participate in the economy, pay their bills, buy food, etc.[3]

<u>Factual Allegations</u>

62.     Walgreens is the second-largest pharmacy in the United States with annual revenue of $ 133 billion.

63.     In the course of its business, Walgreens represented to Plaintiff and all Class members that it was selling Gift Cards valued in an amount certain, determined and paid for at the time of sale.

64.     Consumers were objectively and reasonably justified in their reliance that such

---

[3] How Do Prepaid Cards Help The Unbanked?, Sunrise Banks.

amounts purchased would be secure, valuable, and free from fraud, tampering or compromise.

65.     Walgreens has known that the Gift Cards it is selling to Plaintiff and Class members are unsecure and susceptible to tampering by third parties at least since 2019. Specifically, third parties tamper with the Gift Cards' Activation Codes prior to a consumer's purchase of them at Walgreens retail stores.

66.     Consumers, when purchasing the Gift Cards, load funds onto the Gift Cards at the point of purchase at a Walgreens store for those funds to be used at a later time. Walgreens then activates the Gift Card so that the Activation Code is able to be used.

67.     However, since the Gift Cards have been tampered with, upon activation, third parties are able to utilize the Gift Cards' Activation Codes and deplete or use the funds on the Gift Cards. As a result, the purchased Gift Cards become worthless and/or worth less prior to any authorized use by the consumer.

68.     Plaintiff and Class members purchase and load funds onto the Gift Cards under the mistaken belief that the Gift Cards are secure, merchantable, and fit for their intended use - for the future purchase of products with the funds loaded onto the Gift Cards.

69.     Walgreens knew or should have known that one potential method third parties were using to learn the concealed Activation Code involved the third parties removing the security tape covering the Activation Code on the Gift Cards, recording the Activation Code and replacing the tamper evident tape with a commercially available equivalent substantially similar, but not identical, to the original tamper evident tape or other such means.

70.     Walgreens knew or should have known scammers may make copies of Gift Cards' bar code number to perpetrate the scam.

71.     Numerous media outlets have reported unsecured gift card scams at Defendant's

stores. A sampling of the media coverage follows.

72.     In 2019, the *Milwaukee journal sentinel* reported a gift card scam perpetrated by an unscrupulous actor utilizing the method aforementioned.[4]

73.     According to WPTV news, a similar scam unfolded in Walgreens located at Boca Raton, Florida.[5]

74.     The CBS news in Waukesha County, Wisconsin reported a similar story in November 2019 about the altered bar codes and the method utilized by the scammers. [6]

75.     Numerous Walgreens customers posted online experiences with the scammed Gift Cards.

76.     In one comment posted around November 2022 on reddit.com, the poster wrote "Gift card scam at Walgreens location."

77.     He/she commented that "I brought a mastercard giftcard from Miami Florida and three card numbers were scratched off and *walgreens can't do anything about it.*" The readers followed with similar experiences and comments.

78.     Furthermore, Walgreens has received hundreds, if not thousands, of complaints by Plaintiff and Class members who experienced the depletion of their Gift Card funds,

79.     These complaints put Walgreens on notice that the secret Activation Code on the cards were not guaranteed to be secure prior to or at the moment of first commercial sale at the registers in its stores.

80.     Walgreens also has access to records indicating when the Gift Cards are loaded, when they are redeemed, and how and where they are redeemed.

---

[4] Here's how scammers used gift cards to try to rip off customers at a Franklin Walgreens
[5] Gift cards with fake barcodes found in Boca Raton Walgreens
[6] Elm Grove police uncover gift card scam in Waukesha County

81.     In addition to complaints received at its headquarters, Walgreens employees and agents received in-store complaints from customers regarding Gift Card tampering prior to sale and these complaints were sufficient to put Walgreens on notice that the concealed Activation Code on the cards were not guaranteed to be secure prior to or at the moment of first commercial sale at the registers in its stores.

82.     Despite Walgreens' interactions with Class members, Walgreens continued selling Gift Cards with the knowledge that they were susceptible to tampering by third parties and that there was a risk to the consumer that their Gift Cards would be worthless and/or worth less to them after purchase. Walgreens' failure to warn Plaintiff and Class members has continued to this day.

83.     Despite Walgreens' knowledge of the tampering with the Gift Cards, through consumer complaints and otherwise, Walgreens failed to take adequate and reasonable measure to ensure that third parties did not tamper with the Gift Cards and to protect its customers from having their Gift Card funds depleted or used by third parties.

84.     For example, Walgreens could have trained its employees to physically check the Gift Cards for tampering of the security tape, or warned customers to check the Gift Cards for tampering before purchasing and loading the Gift Cards with funds.

85.     Walgreens could also have used security devices or procedures to prevent the Gift Cards' security tape from being accessed by store visitors prior to checkout, such as by having the sellable Gift Cards accessible only to store personnel.

86.     Walgreens failed to warn or disclose to Gift Card purchasers, including Plaintiff and Class members, of the probability and/or possibility that their Gift Cards had been tampered with in a manner that allows third parties to withdraw the cash loaded onto them, that other third parties have knowledge of the secret Activation Code, and that Walgreens is not the only entity in

possession of the Gift Card's Activation Code. Walgreens failed to disclose to Plaintiff and Class members that it does not properly safeguard the Gift Cards.

87.     Walgreens had special knowledge of these material facts, to which Plaintiff and Class members did not have access and thus Walgreens had a duty to disclose.

88.     Without being told that their Gift Cards were not secure and could have easily been compromised prior to the first sale in the stream of commerce in a manner that allowed third parties to withdraw the cash loaded onto them, Plaintiff and Class members naturally concluded that the amounts credited on the Cards would be available to them.

89.     Walgreens failed to inform or disclose to the public, including Plaintiff and Class members, that their Gift Cards are not secure and could be tampered with prior to the first sale in the stream of commerce in a manner that allows third parties to withdraw the cash loaded onto them. These are material facts, in that they would have affected the purchasing decisions of Plaintiff and Class members.

90.     Plaintiff and Class members believed that Walgreens would keep their Gift Card account information reasonably secure.

91.     Had Walgreens disclosed to Plaintiff and members of the Class that Walgreens did not have adequate systems, policies, and security practices to secure customers' Gift Card account information and Gift Card funds, Plaintiff and members of the Class would not have purchased the Gift Cards.

92.     No reasonable consumer, including Plaintiff and Class members, would knowingly purchase a Gift Card where there was a probability or possibility that, prior to sale, the secret Activation Code was known to third parties other than Walgreens or an entity with a "need to know."

16

93.     Based on Defendant's special knowledge, it should have informed Plaintiff and class members at the time of purchase that Walgreens' security practices were inadequate to protect the funds placed on the Gift Cards, and that the Gift Cards were susceptible to third party tampering.

94.     Walgreens has failed and refused to replenish the balance on Plaintiff's and Class members' Gift Cards or refund the money.

95.     As a direct and proximate result of Walgreens' conduct, Plaintiff and Class members suffered injury.

96.     Plaintiff and class members were damaged in the amount of the money loaded on the cards but lost due to a third party using the funds. Additionally, Plaintiff and Class members suffered embarrassment, humiliation and distress associated with giving valueless Gift Cards to family members, friends, and others.

97.     The tampering of Gift Cards purchased from Walgreens is rampant and widespread and Walgreen is well-aware of the problem, yet Defendant continues to sell unsecure Gift Cards susceptible to tampering without warning consumers of this fact.

98.     When: Defendant made material misrepresentations and/or omissions during the putative Class periods, including prior to and at the time Plaintiff and Class Members purchased the Gift Cards.

99.     Where: Defendant's marketing message carried through material misrepresentations and/or omissions on the labeling of the Gift Cards and at Walgreens stores.

100.    How: Despite its knowledge that the Gift Cards were subject to third party tampering at least since 2019, Walgreens failed to disclose and warn customers. Walgreens could have disclosed them to Plaintiff and Class members on the Gift Card packaging, in-store displays

or through other means.

101.    Why: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class members, and all reasonable consumers to purchase and/or pay for the Gift Cards, the effect of which was that Defendant profited by selling the Gift Cards to tens of thousands of consumers.

Class Allegations

102.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Illinois, Arkansas, Iowa, and Montana who purchased gift cards at Walgreens during the statutes of limitations for each cause of action alleged.

103.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and Class members are entitled to damages.

104.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

105.    Plaintiff is an adequate representative because his interests do not conflict with other members.

106.    No individual inquiry is necessary since the focus is only on Defendant's practices and the Class is definable and ascertainable.

107.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

108.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect Class members' interests adequately and fairly.

109.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"),
§ 501.201 et seq. (Florida Class) and

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS
505/1, et seq. (Multi-State Class)

110.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

111.    The FDUTPA and ICFA prohibit unfair or deceptive acts or practices, in the conduct of trade or commerce.

112.    Walgreens participated in misleading, false, or deceptive practices that violated these statutes by failing to disclose and actively concealing the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value.

113.    Walgreens willfully failed to disclose and actively concealed the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, and otherwise engaged in activities with a tendency or capacity to deceive.

114.    Walgreens also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Gift Cards.

115.    Walgreens misrepresented that the Gift Card's secret Activation Code was private and not within the knowledge of third parties without a need to know.  Alternatively, Walgreens omitted notification to Plaintiff and the Class members that the Gift Card's secret Activation Code

was probably and/or possibly not private and were within the knowledge of third parties without a need to know.

116.    Walgreens intended for Plaintiff and the Class members to believe that its security features prevented anyone but the purchaser or recipient of the Gift Card to use it to purchase goods and services.

117.    At all times, Walgreens intended for purchasers to believe that the secret Activation Code on the Gift Cards was not known to entities or individuals with no legitimate business purposes to know the Activation Code.

118.    Had Plaintiff and Class members known about the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value, they would not have purchased the Gift Cards or would not have paid the prices they paid in fact.

119.    Accordingly, Plaintiff and Class members overpaid for the Gift Cards and did not receive the benefit of their bargain. These injuries are the direct result of Walgreen's representations and omissions.

120.    Walgreens has known about the high likelihood that the Gift Cards had been tampered, with such that they had no value and/or greatly diminished value, but concealed all of that information.

121.    By failing to disclose the high likelihood that the Gift Cards had been tampered with, such that they had no value and/or greatly diminished value, Walgreens engaged in unfair and deceptive business practices in violation of these statutes.

122.    Walgreens' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, to purchase the Gift Cards without revealing the high likelihood that the Gift Cards had been tampered with such

that they had diminished and/or no value.

123.    Walgreens intentionally and knowingly misrepresented material facts regarding the Gift Cards with an intent to mislead Plaintiff and Class members.

124.    Walgreens knew or should have known that its conduct violated the Illinois CFA. Yet, Walgreen purposefully withheld material facts from Plaintiff and Class members.

125.    Walgreens owed Plaintiff a duty to disclose that there was a high likelihood that the Gift Cards had been tampered with such that they had diminished and/or no value because Walgreens possessed exclusive knowledge of the high likelihood that the Gift Cards had been tampered with such that they had no value and/or greatly diminished value and did not perform as advertised.

126.    Walgreens' representations and omissions were material to Plaintiff and the Class members' decisions to purchase the Gift Cards.

127.    Plaintiff and the Class suffered ascertainable loss caused by Walgreens' material omissions and misrepresentations and its concealment of and failure to disclose material information. Plaintiff and Class members who purchased the Gift Cards would not have purchased the Gift Cards but for Walgreens' violations of these statutes.

128.    All owners of the Gift Cards suffered ascertainable monetary loss, to wit: the loss of funds associated with their Gift Cards, as a direct and proximate result of the misrepresentations, statements, assurances, and omissions made by Defendant.

129.    Defendant's violations present a continuing risk to Plaintiff and the Class as well as to the general public. Walgreens' unlawful acts and practices complained of herein affect the public interest.

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

130.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

131.    Defendant sold Plaintiff the Gift Cards described above, however, at the time of the sale, the Gift Cards were not merchantable at the time of the sale because third parties had tampered with the Gift Cards and had stolen the Secret Activation Code from the cards.

132.    The Gift Cards Defendant sold Plaintiff were not fit for the ordinary purpose for which they were typically used because the secret Activation Code was known to third parties at the time of sale rendering the Gift Cards insecure and the balance of the Gift Cards subject to loss.

133.    As a direct and proximate result of the defective nature of the cards at the time Defendant sold the Gift Cards to Plaintiff, Plaintiff and Class members suffered injury and damage in the form of the lost funds that they had loaded onto the Gift Cards.

134.    Defendant received actual notice of the defective nature of the Gift Cards within a reasonable time of the sale of the defective Gift Cards through Plaintiff's and/or Class members' complaints about the defective nature of the Gift Cards and loss of funds.

135.    Plaintiff and the Class seek actual and statutory damages, to the full extent permitted under applicable law.

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE (810 ILCS 5/2-315, ET SEQ.)

136.    Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

137.    At all times pertinent to this action, Defendant was a merchant.

138.    At the time of sale and/or contracting, Defendant had reason to know the particular

22

purposes for which the Gift Cards were required.

139.    The particular purposes described above include but are not limited to the purchase of goods and services.

140.    The buyers of the Gift Cards, including Plaintiff, relied upon Defendant's skill or judgment to select or furnish suitable goods.

141.    Defendant breached its warranty in one or more material respects described more fully above.

142.    Defendant received actual notice of the defective nature of the Gift Cards within a reasonable time of the sale of the defective Gift Cards through Plaintiff's and/or Class members' complaints about the defective nature of the Gift Cards and loss of funds.

143.    Plaintiff and the Class seek actual and statutory damages, to the full extent permitted under applicable law.

<u>BREACH OF CONTRACT</u>

144.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

145.    Every sale of a Gift Card constitutes a lawful express and/or implied contract between Defendant and the purchaser. Plaintiff and the Class members agreed to provide funds to Defendant in exchange for a Gift Card that could be redeemed to purchase products or services.

146.    Plaintiff and the other Class members bargained for a Gift Card that would securely store their funds until such a time when Plaintiff and the other Class members, or their beneficiaries, could use and/or redeem the aforementioned funds to make a purchase. Plaintiff and Class members purchased Gift Cards and tendered the price of payment at the point of sale.

147.    Plaintiff and the Class members fully complied with their obligations pursuant to

the contract with Defendant.

148. Plaintiff and the other Class members did not receive the benefit of their bargain. Defendant materially breached these contracts by, among other things, selling to Plaintiff and the other Class members Gift Cards that were compromised; misrepresenting or failing to disclose its knowledge that the Gift Cards have a significant security vulnerability that could result in a total loss of all funds loaded onto such cards due to improper misappropriation by a third party; and failing or otherwise refusing to provide use or access to funds up to and including the amount exchanged for, or otherwise loaded onto, the Gift Cards.

149. As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<u>FRAUD BY OMISSION</u>

150. Plaintiff incorporates the foregoing paragraphs by reference as if set forth more fully herein.

151. Defendant, at or before the time of sale, fraudulently omitted, concealed, and otherwise failed to disclose their knowledge of material information germane to the significant security vulnerability with the Gift Cards.

152. By means of numerous customer complaints and other methods, Defendant knew about the widespread problem of third parties tampering with the Gift Cards in order to obtain the unique Activation Code and improperly misappropriate customer funds.

153. Defendant had a duty to disclose that the cards were not secure because (1) Walgreen made representations about the amount-certain value of the cards, and needed to say

enough to prevent those words from misleading Plaintiff, and (2) Walgreen had special knowledge that the cards were susceptible to having their security codes compromised by third parties while in its custody and control, and that it could determine whether security tape had been tampered with, to which special knowledge Plaintiff did not have access.

154.    Defendant failed to disclose to Plaintiff and Class members that third parties had tampered with the Gift Cards – or were otherwise capable of doing so – such that the Plaintiff and Class members funds would be used, stolen, or otherwise misappropriated.

155.    Further, Defendant failed to disclose to Plaintiff and Class members that Walgreens did not have adequate systems, policies, and security practices to secure customers' Gift Card account information and Gift Card funds.

156.    Plaintiff and Class members had no reasonable means available to discover the materially omitted information at or before the time of sale.

157.    No reasonable consumer would have purchased a Walgreens Gift Card if the materially-omitted information was sufficiently disclosed at the time of sale.

158.    Defendant intended for Plaintiff to rely upon their omissions and concealment by purchasing the Gift Cards.

159.    Plaintiff and Class members materially relied upon the omissions and concealment by purchasing tampered with Gift Cards.

160.    Plaintiff's and Class members' reliance was justifiable and reasonable because they were not aware of the ease by which a third party could misappropriate funds loaded onto the card, nor were they aware of the probability that a Gift Card had been or could be tampered with or otherwise compromised.

161.    Plaintiff lacked knowledge that Defendant's statements and omissions were false.

162.    As a direct and proximate result, Plaintiff was damaged by the loss of the funds he loaded onto the tampered Gift Cards.

163.    Defendant's actions were wanton, reckless and intentional so as to justify the imposition of punitive damages.

164.    Plaintiff and Class members are entitled to punitive damages to punish Defendant and to deter Walgreens and others from engaging in similar conduct in the future.

UNJUST ENRICHMENT

165.    Plaintiff incorporates by reference all preceding paragraphs.

166.    Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members.

167.    A benefit was conferred upon Defendant at the Plaintiff's and Class members' expense under circumstances that would make retention of the money unjust.

168.    Walgreens received money from the sale of the Gift Cards and Plaintiff and Class members received nothing of value in return.

169.    Walgreens was enriched by retaining the profits associated with the sale of merchandise.

170.    Defendant has appreciated the benefit and had knowledge and awareness that it was, in fact, receiving a benefit.

171.    As a result, Plaintiff and Class members have been damaged.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: April 13, 2023

Respectfully submitted,

Sheehan & Associates, P.C.

*/s/Spencer Sheehan*
Spencer Sheehan
60 Cuttermill Rd., Ste 412
Great Neck, NY 11021-3104
Tel: (516) 303-0552
spencer@spencersheehan.com
