**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUES CALIXTE, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:22-cv-01855 <br>) |
| v. | ) Judge Joan H. Lefkow <br>) |
| WALGREEN CO., | )<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

Jacques Calixte brings this action against Walgreen Co. ("Walgreens"), individually and on behalf of a proposed class of similarly situated consumers in Illinois, Florida, Arkansas, Iowa, and Montana.[1] Calixte's sole remaining claim is that Walgreens breached its implied warranty of merchantability by selling him defective prepaid gift cards. Walgreens moves for summary judgment or, in the alternative, to deny class certification. (Dkt. 59.) For the reasons stated below, the court grants Walgreens's motion for summary judgment and denies its motion to deny class certification as moot.

**BACKGROUND**

**I.    Calixte's Gift Card Purchase and Dispute Resolution**

In November 2020, Jacques Calixte bought three $150 Vanilla Visa Prepaid Gift Cards from a Walgreens store.[2] At the time of purchase, each card was loaded with the full $150.00

---

[1] The court has jurisdiction under 28 U.S.C. § 1332(d)(2). Venue is proper under 28 U.S.C. § 1391(b)(2).

[2] The court relies on the factual assertions and objections contained in the parties' Local Rule 56.1 submissions. *See* N.D. Ill. L.R. 56.1. When the movant submits a properly supported statement of material facts, those facts "are admitted unless the non-movant specifically controverts them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor." *Hinterberger* v. *City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (internal quotation omitted).

amount. Thereafter, Calixte lost the cards within his home. Calixte rediscovered the cards in March of 2022, finding all three unopened. He checked the cards' balances and found that a portion of the funds had been spent on two of the cards.

Calixte then called InComm Payments ("InComm"), the provider that distributes and services the cards, about "the submission of [his] situation to their dispute resolution process." (Dkts. 65 ¶ 10; 24-1 ¶ 3; 25-1 ¶ 3; 60-10 Ex. J, at 229:22–230:4.) On March 12, 2022, InComm sent Calixte an email confirming that he had verbally notified them of his claim. In addition, that email stated InComm would "begin [its] investigation" once Calixte completed and returned an attached case form. (Dkts. 65 ¶ 12; 24-1 Ex. A, at 5.) The case form consisted of two pages; it requested Calixte's contact information, card number, how he would like to be reimbursed, and details about unauthorized transactions, including attempts to reconcile with the card merchant. InComm's email said that the form "should be completed and returned … immediately." (Dkt. 24-1 Ex. A, at 5.) Calixte never returned the form. Apart from this communication with InComm, Calixte did not report any problems with the cards to Walgreens or any other relevant entity prior to contacting his attorney and filing this lawsuit.

Calixte initiated this suit on April 9, 2022. His amended complaint asserted seven claims against Walgreens, including violations of the Florda Deceptive and Unfair Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and related state-law claims. Walgreens moved to dismiss Calixte's amended complaint, and the court dismissed all of Calixte's claims with prejudice except for his claim for breach of the implied warranty of

---

The court may elect to enforce strict compliance with Local Rule 56.1. *See Curtis* v. *Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015). The court may disregard claims not supported by citation to "specific evidentiary material"; the parties' submissions should not include legal argument. N.D. Ill. L.R. 56.1(d)(2), (4). The court relies on the relevant and properly supported factual assertions based on the undisputed facts, the parties' admissions, and, if a fact was properly disputed, the court's review of the underlying evidence.

merchantability. After completing discovery, Walgreens moved for summary judgment with respect to Calixte's remaining claim or, in the alternative, to deny class certification.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya* v. *Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the movant has the burden of demonstrating "the absence of a genuine issue of material fact." *Hutchison* v. *Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018) (quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)). To defeat the motion, the nonmovant must then show a genuine, material factual dispute supported by "proper documentary evidence." *Weaver* v. *Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (citation omitted).

The court views the facts and draws all reasonable inferences therefrom in favor of the nonmovant; nonetheless, the nonmovant must do more than raise "metaphysical doubt" in the mind of the court to advance to trial. *See Hutchison*, 910 F.3d at 1021–22 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Weaver*, 3 F.4th at 934 (quoting *SportFuel, Inc.* v. *PepsiCo, Inc.*, 932 F.3d 589, 601 (7th Cir. 2019)). If the nonmoving party is unable to "establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment must be granted." *Lesiv* v. *Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (cleaned up).

## ANALYSIS

Calixte alleges that Walgreens breached the implied warranty of merchantability because the gift cards he purchased were not merchantable at the time of sale. *See* 810 Ill. Comp. Stat. 5/2-314. Specifically, he claims that the gift cards were tampered with by third parties who stole the cards' activation codes. Walgreens moves for summary judgment, arguing that there is no genuine factual dispute that Calixte failed to meet the pre-suit notice requirement associated with his warranty claim. Walgreens moves in the alternative to deny class certification, arguing that Calixte's legal and personal history renders him and his counsel inadequate class representatives.

### I.   Implied Warranty of Merchantability

To establish a breach of the implied warranty of merchantability in Illinois, Calixte must show that (1) Walgreens sold goods that were not merchantable at the time of sale; (2) he suffered damages because of the defective goods; and (3) he gave Walgreens notice of the defect in advance of litigation. *See Rodriguez* v. *Ford Motor Co.*, 596 F. Supp. 3d 1050, 1054 (N.D. Ill. 2022); *see also* 810 Ill. Comp. Stat. 5/2-607(3)(a). Walgreens seeks summary judgment only on the third element, pre-suit notice.

Plaintiffs pursuing a breach of warranty claim must notify sellers of the claimed breach or be barred from recovery under the Illinois Uniform Commercial Code. 810 Ill. Comp. Stat. 5/2-607(3)(a). Plaintiffs must establish that the manufacturer was "somehow apprised of the trouble with the particular product purchased by a particular buyer." *O'Connor* v. *Ford Motor Co.*, 477 F. Supp. 3d 705, 716 (N.D. Ill. 2020) (quoting *Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996)). The purpose of the notice requirement is to encourage pre-suit settlement negotiations between the parties. *Rodriguez*, 596 F. Supp. 3d at 1054.

Usually, this requirement is satisfied by direct notice to the seller, but Illinois law provides exceptions where (1) the seller already has actual knowledge of the particular product's defect; or (2) the consumer suffers a personal injury and thus may provide notice by filing suit. *See Gibson* v. *Albertsons Companies, Inc.*, No. 22 CV 642, 2024 WL 4514041, at *12 (N.D. Ill. Oct. 17, 2024) (citing *Connick*, 675 N.E.2d at 589). It is undisputed that Calixte did not provide direct notice to Walgreens and that the personal injury exception does not apply. Calixte only argues that Walgreens had actual knowledge of the alleged defect in his gift cards.

Under Illinois law, a seller has "actual knowledge" when it is aware that a buyer's particular transaction is "troublesome and must be watched." *Connick*, 675 N.E.2d at 590 (cleaned up). Unlike direct notice, actual knowledge does not require that the seller interact firsthand with the buyer; the seller can obtain actual knowledge through an intermediary. *See id.* However, the seller must obtain actual knowledge of the specific buyer's claim of breach; it is not enough for the seller to learn of general defects within the product line. *Id.* at 589–90 (finding no actual knowledge where defendant knew of widely-publicized safety risks with its vehicle but did not know about the particular defects encountered by individual plaintiffs).

### A. Communications with InComm

Calixte argues that his communications with InComm in March 2022 raise a triable factual dispute as to whether Walgreens had actual knowledge of the defect. Calixte admits that no other communications with InComm exist. Nevertheless, he claims that InComm followed up on its call with Calixte by notifying Walgreens of his claim.

As an initial matter, the record contains no communications between InComm and Walgreens. Acknowledging the absence of such evidence, Calixte attempts to analogize his case to *Andrews* v. *Carbon on 26th, LLC*, where the court found actual knowledge in a breach of

5

warranty claim. 244 N.E.3d 365, 376–77 (Ill. App. Ct. 2024), *appeal allowed sub nom. Andrews*, 244 N.E.3d 267 (Ill. 2024). In *Andrews*, a restaurant, distributor, and wholesalers were sued by dozens of customer-plaintiffs who alleged they were sickened by E. coli contaminated cilantro. *Id.* at 369–70. While the customer-plaintiffs' suits were pending, the distributor filed a third-party complaint arising from the same sales of cilantro, alleging breach of warranty by two wholesalers. *Id.* at 370. Applying *Connick*, the court found that the distributor did not need to give the wholesalers pre-suit notice because the wholesalers had already gained actual knowledge from the ongoing customer-plaintiffs' suits. *Id.* at 376–77.

Calixte argues that because InComm and Walgreens were within the same chain of distribution, like the wholesalers in *Andrews*, his notification to InComm could be the basis for Walgreens's actual knowledge. He suggests that the *Andrews* court found the wholesalers had actual knowledge because of their place within the distribution chain. That is incorrect. The wholesalers gained actual knowledge because they were *specifically named* by the customer-plaintiffs' suits. 244 N.E.3d at 376. Unlike *Andrews*, where the court was able to review the communications that generated actual knowledge—that is, the customer-plaintiffs' court documents—the record here does not reveal any communications to or by Walgreens. Calixte's case is wholly distinguishable.[3]

### B. Relationship Between InComm and Walgreens

Calixte nonetheless posits that Walgreens had actual knowledge of the card defects because "it appears to be customary in the gift card industry, even required by law and/or

---

[3] Calixte also references pre-*Connick* authority, cited in *Andrews*, which does not support his claim. *Malawy* v. *Richards Manufacturing Co.*, 501 N.E.2d 376 (Ill. App. Ct. 1986); *Crest Container Corp.* v. *R.H. Bishop Co.*, 445 N.E.2d 19 (Ill. App. Ct. 1982); *Overland Bond & Investment Corp.* v. *Howard*, 292 N.E.2d 168 (Ill. App. Ct. 1972). The *Andrews* court specifically noted that all three cases presented "more concrete" examples of actual knowledge: in both *Malawy* and *Crest*, "an employee of the seller observed the malfunctioning product firsthand," and in *Overland*, the "plaintiff had his vehicle towed to the dealer's lot because the engine had fallen out." *Andrews*, 244 N.E.3d at 376. There is no such evidence in the record here.

contract, for [an entity like InComm] to follow up on these types of complaints." (Dkt. 66 at 11.) His theory is unavailing.

Calixte has not produced sufficient evidence that could convince a reasonable jury that InComm gave Walgreens actual knowledge of the alleged defect in his cards. Even if an agreement between the parties existed, a jury would still have to conclude that InComm and Walgreens had procedures in place to report instances of alleged defects. Absent any agreement or record of communication between InComm and Walgreens, such a conclusion is not supported. Calixte's statement that InComm and Walgreens "may" be bound by contractual provisions relating to fraud is speculative and does not advance his claim. (Dkt. 65 ¶ 50); *see SportFuel*, 932 F.3d at 601 ("[S]peculation may not be used to manufacture a genuine issue of fact") (citation omitted).

A jury would also have to conclude that the theoretical arrangement would prompt InComm to individually report a claim like Calixte's. *Connick*, 675 N.E.2d at 590 (requiring evidence of "*this particular transaction*" to establish actual knowledge) (emphasis in original). There is no such evidence.[4] To the contrary, it is unclear how InComm could have reported Calixte's claim given that he did not complete the emailed case form. InComm's email to Calixte said that it would "begin [its] investigation" once he completed and returned the form. (Dkts. 65 ¶ 12; 24-1 Ex. A, at 5.) Calixte has produced no evidence showing that InComm retained a permanent file on Calixte's case, that it investigated his claim, or even that it recorded where

---

[4] Calixte's submitted exhibits do not assist him. The Supervisory Memorandum from the Texas Department of Banking regarding authorized delegate relationships and sample Authorized Delegate Agreement (found online) plainly lack foundation and, therefore, are not properly considered at summary judgment. *See Herrera* v. *Target Corp.*, No. 07 C 2193, 2009 WL 3188054, at *2 (N.D. Ill. Sept. 30, 2009) ("Because the exhibits lack foundation, the court cannot consider it on summary judgment."). The Walgreens product webpage, which states that Walgreens is an authorized delegate of InComm under Chapter 151 of the Texas Finance Code, also lacks foundation, as Calixte fails to identify who created the exhibit, or when. Even if admitted, the mere existence of an authorized delegate relationship does not approach the evidence necessary to create a triable dispute of fact as to whether Walgreens had actual knowledge of Calixte's particular transaction.

Calixte purchased the cards. If anything, the record implies that InComm did not investigate Calixte's case because he failed to return the case form. Considering these gaps in the record, a fact finder could not reasonably conclude that InComm reported Calixte's case to Walgreens.[5]

### C. Discovery

Finally, the court addresses Calixte's contention that he has received inadequate discovery regarding InComm and Walgreens. In June 2024, the parties jointly moved to stay discovery. In that motion, Calixte agreed that "any additional discovery would not be relevant to the narrow issues presented in [Walgreens's Motion for Summary Judgment]" and that he "would not be prejudiced by the stay." (Dkt. 53 ¶ 7.) Calixte now complains that he "has not had the opportunity for full discovery." (Dkt. 66 at 10.)

Calixte did not request an extension to the discovery deadline or properly seek additional discovery before responding to the present motion.[6] Fed. R. Civ. P. 56(d). Notably, Calixte does not make either request now. Counsel for Calixte identifies the cost of litigation as a reason for staying discovery, but this does not explain Calixte's position at the time that any additional discovery "would not be relevant." (Dkt. 53 ¶ 7.) Calixte offers no other persuasive explanation for his failure to act. The court is therefore disinclined to accept his updated stance. *See Physicians Healthsource, Inc.* v. *Allscripts Health Sols., Inc.*, No. 12 C 3233, 2016 WL 7034074, at *4 n.9 (N.D. Ill. Dec. 2, 2016) ("[I]nferences from silence are often perilous. But not always in

---

[5] The court also cannot evaluate actual knowledge without information about the hypothetical communication(s) that purportedly gave Walgreens notice. *See O'Connor*, 477 F. Supp. 3d at 717 ("[T]he sufficiency of notice is not an issue if plaintiffs do not allege notice in the first place") (citation omitted). The court's lack of basis to evaluate actual knowledge further clarifies that Calixte has failed to raise his claim above the level of "metaphysical doubt." *See Hutchison*, 910 F.3d at 1021 (quoting *Matsushita*, 475 U.S. at 586).

[6] Calixte also quotes Federal Rule of Civil Procedure Rule 11(b)(3), arguing that his theory "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (Dkt. 66 at 11.) Setting aside that discovery has closed, Rule 11 relates to an attorney's obligation to ensure that factual contentions are supported by the evidence. It is not a vehicle for obtaining additional discovery.

a context where some prompt outcry would be expected. If the plaintiff truly was handicapped … it is doubtful that it would have said nothing and proceeded through discovery.").

Accordingly, it remains appropriate to resolve summary judgment based on the present record—particularly given the paucity of existing evidence supporting Calixte's theory. *See Helping Hand Caregivers, Ltd.* v. *Darden Restaurants, Inc.*, 900 F.3d 884, 890–91 (7th Cir. 2018) ("Where the failure to secure discovery is due to a party's own lack of diligence, the district court can in its discretion … decide the summary judgment motion."). Indeed, the pre-suit notice requirement exists to "to encourage parties to resolve the dispute short of litigation," not to provide a basis for belated, speculative discovery. *Ibarrola* v. *Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015).

For the foregoing reasons, the court concludes that no reasonable jury could find that Walgreens had actual knowledge of Calixte's allegedly defective gift cards. Therefore, Calixte is not excused from the pre-suit notice requirement and his failure to provide Walgreens with notice bars his breach of warranty claim. 810 Ill. Comp. Stat. 5/2-607(3)(a). The court grants summary judgment in favor of Walgreens.

## II. Class Certification

Walgreens has asked the court, if it denies summary judgment, to grant its preemptive motion to deny class certification. Here, the court denies Calixte's claim on the merits before he has requested class certification. Where the named plaintiff's claim is mooted before class certification, "the suit must be dismissed because no one besides the plaintiff has a legally protected interest in the litigation." *Martinez* v. *Saul*, No. 20-CV-00008, 2021 WL 825652, at *4 (N.D. Ill. Mar. 4, 2021) (quoting *Wiesmueller* v. *Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008)).

Accordingly, the court need not address the issue of class certification and Walgreens's motion to deny class certification is denied as moot.[7]

## CONCLUSION AND ORDER

For the foregoing reasons, Walgreens's motion for summary judgment (dkt. 59) is granted and its motion to deny class certification (*id.*) is denied as moot. The Clerk is directed to enter judgment in favor of Walgreens on the remaining claim.

Date: December 19, 2024

_____
U.S. District Judge Joan H. Lefkow

---

[7] The court's granting of summary judgment on Calixte's claim has no preclusive effect on the future claims of those that might have been included in the putative class had it been certified. *See Cowen* v. *Bank United of Tex., FSB*, 70 F.3d 937, 941–42 (7th Cir. 1995).